No. 23.—H. G. R. McNeil, for the use, &c. plaintiff in error, *vs.* E. F. Knott, defendant in error.

[1.] A plea, that before the right of action accrued upon the note which is sued on, to wit, in May, 1843, the defendant became a bankrupt, within the true meaning and import of the Act of Congress of 1841; and that by reason thereof, the debt, which is the foundation of the action, is fully discharged, and its recovery completely barred, is sufficient to admit the certificate of discharge.

[2.] If the plea of bankruptcy was defective, the case being in the last resort, the defendant should be allowed to amend.

[3.] A certified copy of the order of discharge, reciting all the previous proceedings which had been had in the case, and that the applicant had fully complied with every requisition which had been made upon him by the Court, and obeyed every provision of the law, is a proper certificate of discharge, as required by the Act.

[4.] Every indorser of a promissory note, warrants that the note is valid, and that the maker is liable to pay it.

[5.] Upon a qualified indorsement, to be liable in the second instance only, if the note has been previously paid by the maker, the right of action accrues immediately in favor of the holder, against the indorser.

[6.] Under the Act of 19th August, 1841, contingent demands, arising out of indorsements, bail and other uncertain undertakings, may be proven against the bankrupt, and when these claims become absolute, they will be allowed to participate in the bankrupt's effects.

Assumpsit, in Pike Superior Court. Tried before Judge Stark, February adjourned Term, 1852.

On the 31st day of May, 1839, William Segur and William Crawford executed their joint and several promissory note, to Henry Kunkle or bearer, for one hundred dollars, payable on the 25th December, ensuing. Kunkle transferred the note to Edward F. Knott, by delivery. On the 14th day of December, 1841, Knott transferred the note to the plaintiff, by the following indorsement:

"I indorse the within note, to be liable in the second instance." E. F. Knott.

On this indorsement this action was brought.    Among other pleas, the defendant filed the following, " that plaintiff ought not to be permitted to maintain his said action against the defendant ; because, after the making of said several supposed promises and undertakings in the said declaration mentioned, if any such were made, and after the accruing of the said several supposed causes of action, if any such ever accrued, to wit, on the 23d day of May, in the year 1843, he, the said defendant, became a bankrupt, within the true meaning and intent of the Statute then in force, concerning bankrupts, to wit, an Act or Statute, passed by the Congress of the United States in the year 1841 ; and that said supposed causes of action, in said declaration mentioned, if any such there were or be, did accrue to said plaintiff before this defendant became, and was declared a bankrupt, by which this defendant was discharged from all his debts, including the one sued for, &c. &c.    And for further plea, this defendant says, that after the supposed causes of action commenced, and before the commencement of plaintiff's action, this defendant was duly discharged as a bankrupt, under the bankrupt law of the United States, passed in the year 1841," &c.

On the trial on the appeal, at February adjourned Term, 1851, of Pike Superior Court, the plaintiff gave in evidence, an exemplification from the Superior Court of Henry County, from which it appeared, that McNeil, on the 20th day of September, 1842, commenced an action on said note, against William T. Crawford, as the executor of William Crawford, to which the defendant filed the plea of payment, alleging that the note had been paid off by William Segur, when in the hands of the original payee.

At the April Term of said Court, in the year 1845, the Jury found a verdict for the defendant.

The plaintiff having closed, the defendant tendered in evidence his certificate of discharge in bankruptcy, of which the following is a copy :

McNeil *vs.* Knott.

"District Court of the United States, District of Georgia.

"In Bankruptcy: Edward F. Knott, of the Town of McDonough, Henry County, Georgia—Physician, and one of the firm of Crew, Segur & Knott, and of Bond & Knott, and of James & E. F. Knott, of McDonough—a bankrupt, having filed his petition, praying that a full discharge of all his debts may be decreed and allowed, and a certificate thereof be granted him, pursuant to the Act of Congress, entitled an Act to establish a uniform system of bankruptcy throughout the United States, passed the 19th August, 1841; and it appearing to the Court, upon the petition and reports of the Clerk and assignee accompanying the same, that the said bankrupt has surrendered all his property and rights of property, with the exception of the necessary household and kitchen furniture, and such other articles as has been designated and set apart by the assignee, and the wearing apparel of the said bankrupt, and that of his wife and children; and that the said bankrupt has fully complied with and obeyed all orders and directions, which, from time to time have been given and passed by the Court, and has otherwise conformed to all the requirements of the said Act; and that no written dissent to such discharge has been filed by a majority, in number and value, of his creditors, who have proved their debts, and no cause being now shown to the Court, why the prayer of the petitioner should not be granted.

"On motion of H. R. Jackson, by Joseph W. Jackson, attorney for the petitioner, it is therefore, by virtue of the Act aforesaid, ordered, decreed and allowed, that the said Edward F. Knott be, and he is hereby, fully discharged of, and from all his debts, owing by him, at the time of the presentation of his petition to be declared a bankrupt; and it is further ordered and granted, that the Clerk duly certify a copy of this decree, under the seal of the Court, and deliver the same to the bankrupt when demanded."

Which said certificate was duly certified by the Clerk of said District Court.

To the introduction of the certificate in evidence, counsel for

plaintiff objected, on the grounds : 1st. Because the defendant had not pleaded it.

2d. Because it was not competent evidence, either as a defence or as being such a certificate, as under the Bankrupt Act, could be pleaded in bar.

The Court overruled the objection, and counsel for plaintiff excepted.

On motion of counsel for defendant, the Court permitted the plea to be amended, by pleading the certificate specially.

To which, counsel for plaintiff excepted.

Among other things, the Court charged the Jury, " that if they were satisfied that at the time of making the indorsement, the note had been paid off by one of the makers, to the payee, then the indorsee had an immediate right of action against the indorser, and it was such a subsisting debt, as even in England, might have been proved under the commission of bankruptcy, and such a debt is barred by the certificate ; that under our law, even if the defendant's liability, under this indorsement, were an uncertain contingent demand, dependent on the solvency of the makers of the note, the holder of the note might have been permitted to prove his debt, under the Act; and his failure to do so, is a waiver of all future right of recovery, if the debt, though contingent, existed at the time of application."

To which charge, counsel for plaintiff excepted, and upon these several exceptions, have assigned error.

W. W. ARNOLD, for plaintiff in error.

ALFORD & MOORE, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

It seems, that in May, 1839, Wm. Segur and Wm. Crawford, made a note for $100, payable Christmas next thereafter, to one Henry Kunkle or bearer. Kunkle, the payee, transferred the note, by delivery, to Edward F. Knott, who, in 1841, indorsed it to Hector G. H. McNeil, the plaintiff, *to be liable in the*

*second instance.* Segur, one of the makers, left the country. Suit was brought against the estate of Crawford, who had died in the meantime, and on the final trial, in 1845, it was proven, and so found by the Jury, that the note had been paid off and discharged by Segur to Kunkle, the payee, while the paper was in his possession. McNeil then sued Knott, who, pending the previous action, to wit, in 1843, had been discharged under the Act of bankruptcy, then in force in the United States; and this writ of error is prosecuted to review and to reverse the several decisions of the Superior Court, upon this trial.

The plaintiff having tendered the note and the indorsement thereon, in evidence, and an exemplification from the Superior Court of Henry County, with some additional proof, showing due diligence on his part, to collect the note out of the makers, and his failure to do so, closed his case.

The defendant then offered a paper, purporting to be his certificate of discharge, as a bankrupt. It was in these words:

"DISTRICT COURT OF THE UNITED STATES, }
          DISTRICT OF GEORGIA.. }

In Bankruptcy: Edward F. Knott, of the Town of McDonough, Henry County, Georgia—physician, and one of the late firm of Crew, Segur & Knott, and of Bond & Peck, and of James & E. Knott, of McDonough—a bankrupt, having filed his petition, praying that a full discharge of all his debts may be decreed and allowed, and a certificate thereof be granted him, pursuant to the Act of Congress, entitled an Act to establish a uniform system of bankruptcy throughout the United States, passed 19th August, 1841; and it appearing to the Court, upon the petition and report of the Clerk and assignee accompanying the same, that the said bankrupt has surrendered all his property, and rights of property, with the exception of the necessary household and kitchen furniture, and such other articles as have been designated and set apart by the assignee, and the wearing apparel of the said bankrupt, and that of his wife and children; and that the said bankrupt has fully complied with, and obeyed all orders and directions, which, from

time to time have been given and passed by the Court, and has otherwise conformed to all the requirements of the said Act; and that no written dissent to such discharge has been filed by a majority, in number and value, of his creditors, who have proved their debts; and no cause being now shown to the Court why the prayer of the petitioner should not be granted—on motion of H. R. Jackson, by Jos. W. Jackson, attorney for the petitioner, it is therefore, by virtue of the Act aforesaid, ordered, decreed and allowed, that the said Edward F. Knott be, and he is hereby, fully discharged of, and from all his debts, owing by him at the time of the presentation of his petition to be declared a bankrupt; and it is further ordered and granted that the Clerk duly certify a copy of this decree, under the seal of the Court, and deliver the same to the bankrupt when demanded."

I, George Glenn, Clerk of said Court, do certify, that the above orders were made and passed by the Court, on the 23d day of May, 1843. In witness whereof, I have hereunto set my hand, and affixed the seal of the said Court, this 23d day of May, A. D. 1843.

    [*Seal.*]       .           GEORGE GLENN, Clerk.

The introduction of this account was objected to, on the grounds : *First,* That the defendant had not pleaded it.

*Secondly,* Because it was not issued in conformity with the Bankrupt Act.

[1.] The answer of the defendant to the action, was in these words : " The said defendant, by his attorney, Andrew K. Moore, says, that after the making of said note, and his indorsement thereon, to wit, on the 23d day of May, 1843, he, the said Edward F. Knott, became a bankrupt, within the true meaning and intent of the Statute passed by the Congress of the United States, in the year 1841 ; and that said supposed causes of action accrued before this defendant's discharge," &c.

By the Judiciary Act of 1799, the defendant is required to make his answer in writing, which shall plainly, fully and distinctly set forth the cause of his defence. This plea is certainly a substantial compliance with the Statute ; and the Court, there-

fore was right in letting in the evidence which was offered under it.

[2.] But had the plea been defective—the case being in the last resort—the party was entitled to amend.

[3.] Whether the certificate be in conformity with the law which authorizes it to be granted, can be best ascertained by reference to the Act itself.

By the 4th section, it is enacted, "that every bankrupt who shall *bona fide* surrender all his property and rights of property, with the exception before mentioned, for the benefit of his creditors, and shall fully comply with, and obey all the orders and directions which may, from time to time, be passed by the proper Court, and shall otherwise conform to all the requisitions of this Act, shall (unless a majority, in number and value, of his creditors, who have proved their debts, shall file their written dissent thereto) be entitled to a full discharge from all his debts; to be decreed and allowed by the Court which has declared him a bankrupt; *and a certificate thereof granted to him by such Court, accordingly,* upon his petition filed for such purpose." *5th volume United States Statutes at Large,* 443.

This form of certificate is that, no doubt, which has been prescribed by the District Court; and none more appropriate, it occurs to us, could be devised. It recites all the previous proceedings which have been had, the compliance by the applicant with every requisition which has been made upon him, and then declares him entitled to a full discharge from all existing liabilities, and directs the Clerk to certify accordingly.

The error which counsel have fallen into, is in confounding the judgment of *discharge,* which is certified by the Clerk, with the *previous decree,* pronouncing the debtor a bankrupt within the true intent and meaning of the Act.

It is next objected, that the Court erred in charging the Jury, that if the note was paid off by one of the makers, to the original holder, at the time that Knott indorsed it to McNeil, that then a right of action accrued at once to McNeil, notwithstanding Knott was to be liable only in the *second* instance; and that consequently he was bound to prove the debt under the commission

of bankruptcy, or lose it; and that if it were otherwise, and the liability of Knott was *contingent* only, depending upon the result of the original suit instituted against the makers of the note, that still, under the Bankrupt Act of August, 1841, the debt *might* have been, and therefore *must* have been, proven or lost.

The correctness of the first branch of the instructions given to the Jury, will depend upon the construction to be put upon the defendant, Knott's indorsement. It is what is termed a qualified or restricted indorsement. He undertakes to be liable in the *second* instance. Mr. Arnold insists, that McNeil was bound to sue the makers, whether the note was discharged or not; and at any rate, that inasmuch as the fact of payment had not been practically ascertained in May, 1843, when Knott was declared a bankrupt, that this indorsement did not constitute such a debt as could have been proven at that time.

[4.] We think otherwise, and hold that even under this limited indorsement, Knott warranted three things : 1st. That the note which he transferred was valid; 2dly, That the maker was liable to pay it; and 3dly, Its ultimate solvency: that is, payment by himself, upon failure to collect the money out of the makers.

[5.] And if the note was paid by one of the makers, to the original holder, at the time it was indorsed, there can be no doubt, we apprehend, that a right of action accrued immediately in favor of McNeil, upon this indorsement. He was bound to test the *solvency*, but not the *genuineness* of the paper. Knott had no title to the note at the time he passed it. His implied guaranty that the makers would pay it, became, therefore, *eo instanti*, infracted; and his conditional undertaking, converted at once into an absolute liability.

[6.] But suppose it were otherwise, and that this portion of the charge was wrong ; and that a right of action against the indorser did not accrue to the holder, immediately at the time of the making of the indorsement, on account of the notes having been previously paid off by one of the makers ; and this was not, in May, 1843, such a subsisting debt as might, in England,

have been proved under the commission of bankruptcy, but was an uncertain demand, dependent on the result of the suit which was pending at the time that Knott was discharged; still, is it not true, that under the Bankrupt Act of 1841, McNeil would have been permitted to prove, even this *contingent* claim, and thus have entitled himself to the right to participate in the bankrupt's effects, and failing to do so, his remedy against Knott is forever barred?

Even in England now, by the Statute of 6 *Geo. IV. ch.* 16, which was a consolidation and improvement of all the previous Statutes of Bankruptcy, *contingent* debts may be proven; and by the 4th section of the last American Act, it is provided, that "all creditors whose debts are not due and payable until a future day—all annuitants, holders of bottomry and respondentia bonds, holders of policies of insurances, sureties, *indorsers*, bail, or other persons having uncertain or *contingent* demands against such bankrupt, shall be permitted to come in and prove such debts or claims under this Act; and shall have a right, when their debts or claims *become absolute*, to have the same allowed them, &c." *U. States Statutes at Large,* 445.

Here, then, *indorsers* are included, *eo nomine*, in the list of creditors who *may* prove their contingent demands, and who, therefore, are bound to do it at their peril. Shall it be said that the Statute does not mean *indorsers*, who, like Knott, are liable in the second instance only? We find no distinction in the Act, between *indorsers* generally, and those who have partially restricted their liability; and the law making none, we can make none. Indeed there is no good reason why any such should exist. If these indorsers are bound on contracts upon which they may be made ultimately responsible, then they should be provided for. Their liability is not more uncertain than that of bail, nor is it more difficult to ascertain the present value of their contingent debts.

We agree, then, with the Circuit Judge, that this was a *subsisting debt* against Knott, at the date of his discharge; because, the note was satisfied and a nullity, at the time he indorsed it; and the holder, in fact, had no other contract to go on, but that

of the indorsement; and further, that before it was ascertained whether this note was collectable or not, out of the makers, it could have been proven as a *contingent demand* against the *indorser*, under the commission in bankruptcy; and that in either view of it—being proveable under the Act—the certificate is a full discharge of the debt, and a complete bar to the suit brought against Knott, the bankrupt, for its recovery, unless the same shall be impeached for some fraud or wilful concealment by him of his property, contrary to the provisions of the Act, which is not pretended on the part of the creditors.

I have not attempted to meet, in detail, every argument that has been urged upon the Court. I rarely do. It would be wholly impracticable. If we entertained doubts, it would be our duty, perhaps, to grant a re-hearing. But deciding according to the best lights before us, we deem the judgment of the Court below to be correct in every particular.

Judgment affirmed.