## 44079. LOWE v. WELTNER.

WHITMAN, Judge. This is a contested election case by Wyman C. Lowe against Charles Longstreet Weltner involving the Democratic primary election held on September 11, 1968, for nomination for the office of Congressman in the United States House of Representatives for the 5th Congressional District of Georgia. It is before this court on an appeal by the contestant Lowe, plaintiff in the court below, and appellant here, from a judgment of the Honorable Hubert Morgan, Judge of the Superior Court of DeKalb County, Stone Mountain Judicial Circuit, presiding by appointment of Governor Lester G. Maddox in the Superior Court of Fulton County, Georgia, Atlanta Judicial Circuit.

The judgment rendered on September 20, 1968, in favor of Weltner is as follows: "The within and foregoing matter having come on for trial by agreement of the parties, and the defendant having made a motion to dismiss the complaint for failure to state a claim upon which relief could be granted and a motion for summary judgment; and after the citation of authority, argument of counsel, *hearing of evidence,* and consideration by the court, it is hereby ordered and adjudged that defendant's motions are granted, and the plaintiff's complaint is hereby dismissed with prejudice and judgment is granted to defendant, costs being cast upon the plaintiff." (Emphasis supplied.)

The appeal recites that "the transcript of the evidence and of the proceedings of September 20, 1968 is to be transmitted by the clerk as a part of the record on appeal."

The record as transmitted to this court contains plaintiff's original petition filed in the lower court on September 16, 1968, and also plaintiff's substituted petition, verified September 19, 1968, and allowed and ordered filed on that date and filed September 20, 1968.

On September 19, 1968, Weltner as co-defendant moved the court in writing, pursuant to the provisions of *Code Ann.* § 81A-112 (b), (6) and (7), to dismiss the cause on the grounds that: (1) Plaintiff has failed to state a claim upon which relief can be granted; (2) plaintiff has failed to join an indispensable party. (It appeared on the hearing that the alleged indispensable party was the State's Elections Board, and the second ground of the motion was withdrawn or waived by the defendant.)

Judge Morgan, by order of date September 19, 1968, filed September 20, 1968, set the case for trial before him at 10 a.m. September 20, 1968, at the Fulton County Courthouse.

On the call of the case on September 20, 1968, there was before the court plaintiff's substituted petition, plaintiff's original petition being no longer before the court as a pleading, the substituted petition being filed "in lieu of and in substitution for" plaintiff's previously filed petition; and there was also before the court the defendant's motion "to dismiss the above styled cause," the motion being entitled in the cause. In view of the fact that the second ground of the motion was withdrawn, the motion proceeded on the first ground only.

The substituted petition sought to have Weltner's nomination in the primary election declared null and void; "that said Mr. Weltner be declared not to be the lawful nominee of said party for the office stated and another primary be directed to be held to determine the lawful nominee."

On the hearing the trial court announced to the parties: "We have a motion to dismiss. Are you ready to respond?" Whereupon Mr. Lowe responded: "I am ready to proceed on the motion." Thereupon the court proceeded to hear arguments both by counsel for defendant Weltner and by Mr. Lowe; and counsel for Weltner having proposed to submit evidence in support of the motion to dismiss, the court proceeded to hear evidence from one William C. Graham, Election Supervisor of Fulton County, called as a witness by the defendant, with direct examination by counsel for defendant and cross examination by Lowe.

At the conclusion of the testimony by Graham one James Tibbs was called as a witness by plaintiff and examined by Mr. Lowe, and after further re-cross examination of witness Graham by Mr. Lowe the court heard testimony of one Charles R. Powell, called as a witness by the plaintiff and examined

by Lowe, the witness being Assistant Director, Data Processing, Fulton County.

On the hearing of the motion to dismiss there was no objection at any time either at the beginning of or during the hearing to the order of procedure or to the use of evidence by the testimony of the witnesses in connection with the hearing. Thus the motion to dismiss, relating as it did to the substituted petition, and being so heard by the court and the parties, was and is to be treated as a motion for summary judgment and disposed of accordingly. *Code Ann.* § 81A-112 (b).

1. Plaintiff's substituted petition appears to be predicated as to grounds for contest on *Code Ann.* § 34-1703 (a) and (b). Section 34-1703 (b) sets forth as a ground of contest "when the defendant is ineligible for the nomination or office in dispute." Paragraph 7 of the substituted petition is that "illegal votes were received or legal votes rejected at the polls in said district sufficient to change said result or place it in doubt." This is the language of § 34-1703 (c) of the Election Code. There is no evidence in the record to support a contest on either of the grounds as set forth in § 34-1703 (b) or § 34-1703 (c), and there is no enumeration of error or errors in respect of such grounds of contest or either of them.

2. *Code Ann.* § 34-1703 (a) provides as a ground of contest "malconduct, fraud or irregularity by any primary or election official or officials sufficient to change or place in doubt the result." In paragraph 6 of the substituted petition there is set forth in subparagraphs (a), (b) and (c) alleged "malconduct, fraud and/or irregularities" at certain named voting places relating to the display, distribution and use of campaign cards. In paragraph 9 of said petition it is alleged that at another certain polling place a sample ballot was on display to electors containing the name of Weltner as a candidate for Congress, but not the name of Lowe as such a candidate.

It was stipulated on the hearing by counsel for the parties that a written summary of the election returns in the election involved showing voting returns by precincts could be considered on the hearing, and the witness Graham was examined as to the total results and in respect of the results in certain named precincts. A copy of this document is not

contained in the transcript of proceedings filed in this court on October 18, 1968, although matters of stipulation appear therein. This transcript is considered by this court as a part of the record in lieu and instead of the first transcript filed in this court on October 3, 1968, which on account of the illness of the court reporter who reported the case in the trial court, was prepared from memory and approved by the trial judge "with understanding that additional or amended transcript be later filed." However, a copy of the document showing summary of total precinct returns is attached to a supplemental brief of appellant filed in this court on October 21, 1968, and shows a total of 155 voting precincts. Moreover, the court takes judicial notice of the total number of precincts and returns. 31 CJS 1045, Evidence, § 51; Morris v. Fortson, 262 FSupp. 93 (3); Hanover v. Boyd, 173 Tenn. 426 (121 SW2d 120).

It appears from the record that the total vote cast for Weltner was 49,973 and for Lowe 27,882, with a majority for Weltner of 22,091. According to the testimony of witness Graham the total number of votes cast in the 11 precincts particularly inquired about, and being the named precincts referred to in paragraph 6 (a), (b) and (c), and in paragraph 9 of the substituted petition above referred to, was 5,414, 4,941 of that number being cast for Weltner and 473 of that number being cast for Lowe.

In the absence of proof to the contrary, elections held under legally constituted authority are presumed to be regular and valid. *Searcy v. State of Ga.*, 91 Ga. App. 603 (86 SE2d 652).

"The new Election Code provides the exclusive procedure by which an election may be declared void for malconduct or irregularities, to wit, in a contest filed in the superior court, wherein the malconduct or irregularities must be shown to be such as would have changed the result of the election or placed the result in doubt. The consequence of other malconduct or irregularities lies with those charged with the prosecution of criminal violations of the Code." *Laite v. Stewart*, 112 Ga. App. 853 (146 SE2d 553), cert. den. p. 896. *Code Ann.* § 34-1708 (c) provides: "If misconduct is complained of on the part of the poll officers of any election district, it shall not be held sufficient to set aside the contested result unless the rejection of the vote of such district would change such result."

If the votes for Weltner of 4,941 in the particular precincts above mentioned are deducted from his total of 49,973, his total would be 45,032, and if the 473 votes for Lowe in these precincts are deducted from his total of 27,882, his total would be 27,409 as against 45,032 for Weltner, or a majority for Weltner of 17,623.

If to the total of 27,882 for Lowe are added the 4,941 for Weltner in the particular precincts referred to, there would be a total for Lowe of 32,823, and if this total is deducted from Weltner's total of 45,032 (being the total Weltner votes of 49,973 less 4,941), there would still be a majority in his favor of 12,209.

If the total number of 5,414 votes cast in the eleven precincts for both Weltner and Lowe are rejected and deducted from the Weltner majority of 22,091, Weltner would still have a majority of 17,677.

As above indicated, § 34-1703 (a) provides as a ground for contest "malconduct, fraud or irregularity." The substituted petition in paragraphs 6 (a), 6 (b), and 6 (c) uses the language "malconduct, fraud *and/or* irregularities." We do not deem it necessary in connection with this division of the opinion to review the adjudicated cases dealing with the phrase "and/or" or the question of sufficiency of pleadings wherein such phrase is used. See *Saylor v. Williams*, 93 Ga. App. 643 (92 SE2d 565), cert. den. p. 912; *Ralls v. E. R. Taylor Auto Co.*, 202 Ga. 107 (42 SE2d 446); *Shadden v. Cowan*, 213 Ga. 29, 30 (96 SE2d 608).

In none of the events predicated on the calculations above set forth, nor in any event, did the conduct of the election in the eleven precincts, whether characterized as malconduct, fraud or irregularity, operate to change the contested result of the entire election.

3. The last unnumbered paragraph under paragraph 6 of plaintiff's substituted petition is as follows: "Such malconduct, fraud and/or irregularities by poll officers at the polling places hereinbefore stated, where the electors were mainly black persons, and at almost every other polling place in the 5th District where the electors were mainly of the black race, in permitting such distribution of the cards were sufficient to change the result of the primary as to that office or place it in doubt, considering what was the approximate percentage of the total votes of black electors cast as to the

total of all votes cast for Mr. Weltner and Mr. Lowe together in the 5th District."

This paragraph is construed by appellant in his first supplemental brief in this court, wherein, among other things, he stated: "Manifestly, the word 'electors' as so used in said subparagraph did not refer to persons of the black race who voted on September 11, but referred instead to the qualified and registered voters, whether they voted or not on September 11. . . There is certainly a difference between the number of black voters who vote at a polling place and the number qualified and registered to vote there." With this construction of this paragraph the court agrees.

With the exception of fourteen precincts in which there were no Negro registered voters, and in which 2,566 votes were cast for Lowe and 2,638 votes were cast for Weltner, which could not change the result of the election, it does not appear from the record whether the votes actually cast in any precinct were votes of white electors or of black electors or for whom they respectively voted. Therefore, with said exception, it cannot be determined what percentage or approximate percentage of white or black electors actually voting cast their ballots for Lowe or for Weltner.

The color line has no proper place in judicial administration. Therefore, we are not influenced here by and do not give heed to argument which relies on or emphasizes such considerations as so-called white or black or predominantly white or black voting precincts, or to white and black elector percentages or their relation to each other in respect of electors eligible to vote at a particular polling place or at any number of polling places, as the controlling factor or evidentiary guide in determining how or for whom any elector, white or black who actually voted in an election, may have cast his or her ballot.

The law does not know race or color in the matter of eligibility to vote. The principle, now firmly established, of "one person, one vote" has relation to any person, otherwise eligible to vote, regardless of race or color. The judiciary in obedience to the obligation to do equal justice to all under law, exercises its judicial function quite without regard to race, color, or station in life, be the consequences what they may.

So we are not concerned here as to what may otherwise be regarded as white or black or predominantly white or black

voting precincts, nor are we concerned with the results of a primary election for the same office in 1966 referred to by appellant in a supplemental brief in this case, nor are we concerned with any particular group support appellant may have received in the election involved in this case.

In the case sub judice there is no evidence or statement of proposed evidence to show that any particular person or persons voting in the election voted one way or the other as to the two candidates voted on in the election. Under our secret ballot election system third persons cannot be heard to testify how any voter, not legally entitled to assistance, cast his or her vote in the election, there being higher and and better evidence. Any such testimony would constitute either hearsay or a conclusion without any probative value. See *Reliance Ins. Co. v. Oliver*, 117 Ga. App. 466, 469 (160 SE2d 615) and cases cited.

In view of what is said above, the order and judgment of the trial court is affirmed.

*Judgment affirmed. Jordan, P. J., and Hall, J., concur.*

ARGUED OCTOBER 16, 1968—DECIDED OCTOBER 28, 1968—REHEARING DENIED NOVEMBER 13, 1968—

*Wyman C. Lowe*, for appellant.

*Alston, Miller & Gaines, Robert W. Miller*, for appellee.